RACHEL P. STOIAN – SBN 300159
stoian.rachel@dorsey.com
DORSEY & WHITNEY LLP
167 Hamilton Avenue, Suite 200
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288

Attorneys for Creditor,
Adhara Aerospace and Defense, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SKYLOCK INDUSTRIES, INC.,<br><br>      Debtor. | Case No. 2:24-bk-17820-BB<br><br>Chapter 11<br><br>DECLARATION OF JASON SHLECTER IN SUPPORT OF OBJECTION OF ADHARA AEROSPACE AND DEFENSE LLC TO DEBTOR'S MOTION FOR ORDER AUTHORIZING: (1) USE OF CASH COLLATERAL ON AN INTERIM BASIS; AND (2) SETTING A FINAL HEARING ON USE OF CASH COLLATERAL<br><br>**Hearing:**<br>Date:  October 1, 2024<br>Time:  10:00 a.m.<br>Place:  Courtroom 1539<br>          255 E. Temple Street<br>          Los Angeles, California<br><br>Judge: Hon. Sheri Bluebond |

I, Jason Shlecter, declare as follows:

1.  I am a Director of Adhara Aerospace and Defense, LLC, as assignee from PPL Optical Holdings, LLC, as assignee from Pasadena Private Finance, LLC ("Adhara"). I have personal knowledge of the following facts, and could competently testify thereto if called upon to do so. I submit this declaration in support of Adhara's opposition (the "Opposition") to the motion of chapter 11 debtor Skylock Industries, Inc. (the "Debtor") for entry of an order authorizing: (1)

-1-
DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION
CASE NO. 2:24-BK-17820-BB

use of cash collateral on an interim basis; and (2) setting a final hearing on use of cash collateral [Dkt. 3] (the "Motion").

### A.     The Adhara Loan

2.     I understand that the Debtor started looking for additional financing to support its operations in or around 2019, but was unable to secure such financing due to certain accounting irregularities.

3.     On or about August 2, 2022, the Debtor and its affiliate 1290 Optical Drive, LLC ("1290 Optical"), collectively as borrower, Pasadena Private Finance, LLC ("PPF") (Adhara's predecessor), as agent and lender, Skylock Holding, L.L.C., as affiliate guarantor, and Mr. Crevoiserat, as personal guarantor, entered into a Loan Agreement pursuant to which PPF agreed to issue a $7,500,000 term loan and $1,500,000 line of credit in favor of the Debtor and 1290 Optical (the "Adhara Loan" and, together with all of the ancillary loan documents, the "Adhara Loan Documents").[1] The Adhara Loan was secured by, among other things, a deed of trust with respect to the real property owned by 1290 Optical located at 1290 W. Optical Drive, Azusa, California 91702 (the "Optical DOT" and "Optical Drive Property", respectively), a blanket lien on all personal property owned by the Debtor, perfected by duly filed UCC-1 financing statement (the "UCC Lien"), and a stock pledge.

4.     I understand that Adhara's UCC Lien is second in line only to the U.S. Small Business Association (the "SBA"), with original principal amount of $500,000, and potentially certain purchase money security interests in equipment purchased by the Debtor.

### B.     Repeated Defaults and Delays

5.     The Debtor defaulted on the Adhara loan almost immediately, failing to timely make required interest payments starting in October 2022, among other defaults. Myself and other members of the PPF team (the then-holder of the Adhara Loan) thereafter sought to engage in good faith negotiations and communications with the Debtor in order to achieve an orderly work out of

---

[1] The Adhara Loan Documents are voluminous and thus not included with this Declaration. Such documents are available upon request by the Court or any interested party.

-2-
DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION
CASE NO. 2:24-BK-17820-BB

the Adhara Loan. These efforts continued for approximately fifteen months and included workout proposals, waivers of loan covenants, allowance of payment delays, and other concessions by PPF. Unfortunately, these efforts were repeatedly stymied by Mr. Crevoiserat's seeming refusal to engage in negotiations and communications in good faith or to allow the Debtor to fulfill its promises.

6.      A pattern of delay emerged over the course of this time period whereby PPF's efforts to work with the Debtor and discuss potential workouts of the Adhara Loan were met with initial verbal agreements from Mr. Crevoiserat on behalf of the Debtor, but the Debtor's engagement would inevitably wane. In response to requests for financial records, Mr. Crevoiserat would show information on his laptop, assure myself and others on the PPF team that such information would be provided after a meeting, but it was never forthcoming. Indeed, despite repeated requests for financial disclosures and repeated promises by Mr. Crevoiserat that they were forthcoming, the Debtor failed to produce accurate and fulsome financial records that were required to be produced pursuant to the Adhara Loan Documents and that PPF (and its successors) would understandably need to assess the various work out options. *Id.*

7.      On or about January 1, 2024, the parties entered into a Forbearance Agreement with respect to the Adhara Loan pursuant to which the Debtor acknowledged the existence of nine (9) specified events of default and PPF agreed to hold off on pursuing its rights and remedies in order to allow the Debtor to seek a sale of assets or refinancing transaction that would result in funds sufficient to pay off the outstanding obligations under the Adhara Loan. The Forbearance Agreement was terminated January 23, 2024 due to payment default, despite the payment amount being reduced from its originally scheduled amount. We went through extensive drafting of an amended forbearance agreement in February and March 2024 that the Debtor ultimately declined to sign, despite the financial relief it would provide.

8.      On March 1, 2024, PPF retained Oakwood Business Associates, LLC, a consultancy owned and operated by William Baribault. Mr. Baribault has significant aerospace turnaround experience and was retained to provide guidance to the Debtor on how to better manage operations.

-3-
DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION
CASE NO. 2:24-BK-17820-BB

Mr. Baribault executed a non-disclosure agreement as a condition of his work. Mr. Baribault attempted to fulfill his duties under the consulting agreement, but was ultimately hindered by Mr. Crevoiserat who refused to work with him or consider his suggestions for turning around the Debtor.

9. On March 18, 2024, PPF advanced $50,000 to the Debtor so that it could fund its payroll and operations in general.

10. Notwithstanding termination of the Forbearance Agreement, PPF did not immediately exercise its remedies. Instead, we continued in good faith to attempt to negotiate a consensual work out of the Adhara Loan. The Debtor, under the direction of Mr. Crevoiserat, refused to engage in such efforts in good faith and persisted in its pattern of delay and not providing financial documents to PPF.

11. As a result, in or around March 2024, PPF advised the Debtor that it intended to proceed with a foreclosure with respect to the Optical Drive Property. We continued to attempt to negotiate a consensual work out of the Adhara Loan, but were met with delay and resistance from the Debtor.

12. On May 21, 2024, at PPF's direction, the trustee appointed pursuant to the Optical DOT issued a formal Notice of Trustee's Sale to 1290 Optical which informed it that a public sale would be conducted with respect to the Optical Drive Property on June 20, 2024 (the "<u>Optical Drive Sale</u>").

13. Mr. Crevoiserat advised us that there were parties interested in purchasing the Optical Drive Property, but he failed to make meaningful progress with these interested parties because he could neither provide credible tenant financials nor provide comfort around various property-related issues. We were able to connect with one "potential buyer" who advised PPF that they could not work with Mr. Crevoiserat because he failed to provide sufficiently detailed information after an initial call. We encouraged Mr. Crevoiserat to have the interested parties attend the Optical Drive Sale. None did.

-4-
DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION
CASE NO. 2:24-BK-17820-BB

14. On June 20, 2024, PPF executed an Assignment of Notes and Liens in favor of PPL Optical Holdings, LLC ("PPL Optical"), a then-newly formed affiliate of PPF, pursuant to which the Adhara Loan Documents were assigned by PPF to PPL Optical, including the Optical DOT (the "PPL Assignment"). As is customary in this context, PPL Optical was formed to own the Optical Drive Property in the event it was the successful bidder at the Optical Drive Sale since PPF is a lender and not in the business of owning and operating real property.

15. On June 20, 2024, the trustee conducted the duly noticed Optical Drive Sale. No one aside from representatives of PPL Optical appeared at the Optical Drive Sale and, accordingly, PPL Optical credit bid $5,000,000 for the Optical Drive Property.

16. On June 21, 2024, the trustee executed a Trustee's Deed Upon Sale pursuant to which title to the Optical Drive Property was transferred to PPL Optical (the "Optical Drive Deed").

17. On June 25, 2024, the PPL Assignment and the Optical Drive Deed were recorded in the Official Records of the Recorder's Office, Los Angeles County, California on June 25, 2024 at 8:00 a.m. and assigned document identification nos. 20240410130 and 20240410131, respectively.

18. As the new owner of the Optical Drive Property, and as a further demonstration of its good faith, PPL Optical offered to lease the Optical Drive Property to the Debtor on a month-to-month basis for just $50/month (plus utilities, taxes, and maintenance costs) even though the fair market rent would be closer to $50,000/month. The Debtor accepted the lease terms and has occupied the Optical Drive Property subsequent to the public sale.

19. In addition to agreeing to extraordinarily below-market lease of the Optical Drive Property, we continued our good faith efforts to achieve a workout of the Adhara Loan with the Debtor. But as had been the case prior to the public sale of the Optical Drive Property, the Debtor did not match these efforts and no resolution could be achieved.

20. On September 16, 2024, PPL Optical executed an Assignment of Notes and Liens in favor of Adhara, a newly formed affiliate of PPF, pursuant to which the Adhara Loan Documents were assigned by PPL Optical to Adhara, including the UCC Lien.

21. On September 16, 2024, Adhara issued a Notification of Disposition of Collateral pursuant to which it notified the Debtor, Mr. Crevoiserat, and other parties with interest in the collateral that Adhara would conduct a public foreclosure sale of the Debtor's personal property subject of the UCC Lien (the "UCC Collateral") on September 27, 2024 (the "UCC Sale").

22. As is customary in this context, Adhara was formed to own and operate the UCC Collateral in the event it was the successful bidder at the UCC Sale. Indeed, Adhara was positioned to ensure that operation of the Debtor's business would transition as smoothly as possible following the UCC Sale, both as a means of maximizing the value of Adhara's collateral and to avoid the loss of jobs and customers of the business.

23. Both prior to and after issuance of the Notification of Disposition of Collateral, we engaged in concerted marketing efforts with respect to the UCC Collateral. These efforts include contacting twenty-eight third parties that may be interested in buying all or part of the UCC Collateral, entering into non-disclosure agreements and providing more detailed information to eleven such parties, and providing site visits to five interested parties. I anticipated that there would be active bidding at the UCC Sale.

**C.    The Bankruptcy**

24. On September 26, 2024, in order to prevent the UCC Sale from going forward, the Debtor filed its voluntary chapter 11 petition [Dkt. 1] (the "Petition") in the United States Bankruptcy Court for the Central District of California (the "Court").

25. As of the date of this Opposition, the Debtor has not filed its schedules or statement of financial affairs.

26. The list of 20 largest unsecured creditors and creditor matrix appear to be missing certain significant creditors, including Spirit AeroSystems (alleged claim in excess of $10 million), Blank Rome LLP (the Debtor's former bankruptcy counsel), L&J Investment Holdings LLC (pending litigation claim of approximately $90,000), and Blum Courtyard Associates (former landlord with claim of almost $500,000).

27. On September 27, 2024, the Debtor filed four first day motions: (1) the instant Motion for authority to use cash collateral; (2) a motion to approve payment of certain prepetition employee wages [Dkt. 5] (the "<u>Wage Motion</u>"); (3) a utilities motion [Dkt. 6] (the "<u>Utilities Motion</u>"); and (4) a motion to authorize continued use of prepetition bank accounts [Dkt. 7] (the "<u>Cash Management Motion</u>" and, together with the Wage Motion and the Utilities Motion, the "<u>Other First Day Motions</u>").

28. I understand that it is commonplace for first day motions to include a motion for approval of debtor-in-possession financing, but no such motion was filed in this case notwithstanding the fact that the Debtor has not been in a position to pay all of its ongoing monthly expenses for quite some time. It is hard to fathom how the Debtor will have sufficient working capital during this chapter 11 proceeding without the assistance of additional funding. I believe the Debtor was unable to obtain financing, not that it did not need financing.

29. I under that in the Motion, the Debtor attests to its various assets, including certain inventory and accounts receivable, but does not mention that a significant portion of those assets are tied up in a dispute with Spirit AeroSystems who has asserted a claim against the Debtor in excess of $10 million. Of particular importance in this regard is the fact that the Debtor has historically over-relied on Spirit AeroSystems to provide working capital as the Debtor was otherwise cash-strapped and unable to properly manage its own working capital position.

30. As for the Debtor's equipment, it is not clear where the ascribed value of $2,787,500 came from as the Debtor has not provided a recent appraisal of its equipment to Adhara (or its predecessors) and there is none referenced in the Motion.

31. The extent of the secured claims against the Debtor also appears to be undercounted. Based on the proof of claim filed by the SBA, its claim is $520,613.87 – not $485,000. I also understand that Mitsubishi may be owed in excess of $152,000 – not $42,757. Thus, while the Debtor asserts that the aggregate secured claims total approximately $5,516,795, they in fact total at least $5,661,652.

-7-

DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION

CASE NO. 2:24-BK-17820-BB

32. I have reviewed the Debtor's proposed budget filed in support of the Motion (the "Budget") and believe it is both inaccurate and disconcerting. While I generally agree with the projected gross receipts, a number of the purported expenses are questionable:

    a. *Rent Expense* – The Debtor is required to pay only $50/month for its use and occupancy of the Optical Drive Property, not $5,000 and $8,000 sporadically every week or so.

    b. *Insider Payroll* – Does Mr. Crevoiserat intend to pay himself $10,500/week?

    c. *Auto Expense* – I believe this $1,717/week is a payment for Mr. Crevoiserat's personal automobile, an expense that should not be borne by a company that cannot service its funded debt obligations.

    d. *Repairs and Maintenance* – I would like to see documentation to support a need to spend almost $2,000/week on repairs and maintenance.

    e. *Computers and Software* – I would similarly like to see documentation to support spending $550/week on computers and software.

    f. *Other* – What comprises the "other" expenses of $1,070/week?

33. I consider the most egregious expense in the Budget to be the proposed aggregate adequate protection payment of $5,000/month. While Mr. Crevoiserat does not appear to be making any personal sacrifice, the Debtor is proposing to have Adhara make a huge sacrifice and accept just $2,489/month on a loan whose monthly interest only payment is $42,100, that is, less than 6% of the payment that is required under the Adhara Loan Documents. Even more galling is the request to not actually make such payments to Adhara, but to place them "in reserve" in the Debtor's cash collateral account pending resolution of Adhara's claim. There is no basis for reserving payment to Adhara. More important, the Motion should be denied because the Debtor cannot adequately protect Adhara's interests.

-8-

I declare under penalty of perjury that the foregoing is true and correct, executed this 30th day of September, 2024, at Santa Monica, California.

_____
Jason Shlecter

-9-

DECLARATION OF JASON SHLECTER IN SUPPORT OF ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION

CASE NO. 2:24-BK-17820-BB

4857-7636-9899\1