RACHEL P. STOIAN – SBN 300159
stoian.rachel@dorsey.com
DORSEY & WHITNEY LLP
167 Hamilton Avenue, Suite 200
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288

Attorneys for Creditor,
Adhara Aerospace and Defense, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SKYLOCK INDUSTRIES, INC.,<br><br>Debtor. | Case No. 2:24-bk-17820-BB<br><br>Chapter 11<br><br>OPPOSITION OF ADHARA AEROSPACE AND DEFENSE LLC TO DEBTOR'S MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN FINAL BASIS<br><br>**Hearing:**<br>Date: November 6, 2024<br>Time: 11:00 a.m.<br>Place: Courtroom 1539<br>  255 E. Temple Street<br>  Los Angeles, California<br><br>Judge: Hon. Sheri Bluebond |

Adhara Aerospace and Defense, LLC, as assignee from PPL Optical Holdings, LLC, as assignee from Pasadena Private Finance, LLC ("Adhara"), by and through its undersigned counsel, submits this further opposition (the "Opposition") to the motion of chapter 11 debtor Skylock Industries, Inc. (the "Debtor") for entry of an order authorizing use of cash collateral on a final basis [Dkt. 3] (the "Motion"), and respectfully represents and warrants as follows:

-1-
ADHARA AEROSPACE AND DEFENSE, LLC'S OPPOSITION TO DEBTOR'S CASH COLLATERAL MOTION
CASE NO. 2:24-BK-17820-BB

## I. PRELIMINARY STATEMENT

As predicted in Adhara's opposition to entry of interim relief with respect to the Motion [Dkt. 24] ("Adhara's Original Opp."), the Debtor has been unable to comply with its proposed budget and Adhara's cash collateral is diminishing in value under the guidance of the Debtor's absentee Chairman Jeffrey B. Crevoiserat. As a result, the Debtor cannot provide Adhara with the adequate protection required by the Bankruptcy Code and the Motion should be denied on a final basis. The Debtor had the opportunity to perform and establish that it could right its ship – it could not. While the numbers seem to continually shift, the ultimate results are clear – the cash collateral is diminishing in value, the Debtor cannot adhere to its budget, and the Motion should be denied. In the event this Court does grant the Motion on a final basis, Adhara requests that the Debtor be required to pay Adhara adequate protection payments equal to at least as much interest as would be accruing under the Adhara Loan[1] but for the bankruptcy filing. For these reasons and those set forth below, Adhara respectfully requests that this Court deny the Motion.

## II. FACTUAL BACKGROUND[2]

On September 27, 2024, the day after the Petition Date, the Debtor filed the Motion along with the Declaration of Jeffrey B. Crevoiserat in Support of the Motion (the "Original Crevoiserat Decl.") and a proposed budget (the "Original Budget").

On September 30, 2024, Adhara filed Adhara's Original Opp. along with the Shlecter Decl.

Later that day on September 30, 2024, the Debtor filed a supplemental declaration of Mr. Crevoiserat that addressed some of the points raised in Adhara's Original Opp. [Dkt. 26]

On October 1, 2024, the Court held a hearing on the Motion and granted interim relief notwithstanding Adhara's objection thereto.

On October 2, 2024, the Court entered an Order Authorizing: (1) Use of Cash Collateral on

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Adhara's Original Opp.

[2] Adhara respectfully refers the Court and all interested parties to Adhara's Original Opp. and the declaration of Jason Shlecter in support of Adhara's Original Opp. [Dkt. 25] (the "Shlecter Decl."), the contents of which are incorporated herein by reference, for additional factual background relevant to this Opposition.

an Interim Basis; and (2) Setting Final Hearing on Use of Cash Collateral [Dkt. 36] (the "Interim Cash Collateral Order"). In the Interim Cash Collateral Order, the Court authorized the Debtor to use cash collateral "on an interim basis, to pay ordinary and necessary operating expense in accordance with" the Original Budget through November 8, 2024. Interim Cash Collateral Order ¶ 2. The Interim Cash Collateral Order further provides that "[t]he Debtor is authorized to exceed any line item in the [Original] Budget by 15% but is **Ordered** to only pay what is absolutely necessary in accordance with the [Original] Budget pending a final hearing on the Motion, and in no event may the Debtor exceed the amount of $565,000 in total payments during the Interim Period." *Id.* ¶ 3 (emphasis in original).

On October 8, 2024, the Debtor filed, among other things, an amended list of 20 largest unsecured creditors, Schedules A/B, D, E/F, G, and H, and a statement of financial affairs. [Dkt. 48]

In Schedule A/B, the Debtor disclosed having cash of just $6,601.60 as of the September 26, 2024 petition date. In addition to that limited cash, the Debtor disclosed accounts receivable of $535,905.35, but only $318,644.42 was described as collectible. The Debtor also ascribed its "interiors and other inventory" as having an aggregate value of $2,750,000 and its assorted equipment and machinery as having an aggregate value of $2,791,500. The Debtor ascribed "unknown" values to, among other things, raw materials, work in progress, finished goods, hardware, and items carried from termination of the Spirit AeroSystems[3] contract.

On October 16, 2024, the Debtor filed a supplemental memorandum in support of the Motion and declaration of Mr. Crevoiserat in further support of the Motion (the "Supplemental Crevoiserat Decl."). [Dkt. 53] An updated budget was annexed to the Supplemental Crevoiserat

---

[3] The Schedules refer only to "Spirit" and the Supplemental Memorandum and Supplemental Crevoiserat Decl. (defined below) refer to "Spirit Airlines" and apparent negotiations the Debtor is having with Spirit. To the best of Adhara's knowledge, the Debtor manufactured parts for Spirit AeroSystems, not Spirit Airlines. While an error like this arguably makes sense from Debtor's counsel, being relatively new to this matter, its inclusion in the Supplemental Crevoiserat Decl. is telling of how little attention Mr. Crevoiserat pays to the details of his company's operations. Indeed, this was borne out by the glaring omission of Spirit AeroSystems and its $13 million claim (a claim that triggered the Debtor's spiral into bankruptcy) in the Debtor's first day filings (e.g., list of 20 largest unsecured creditors and creditor matrix).

Decl. as Exhibit 4 (the "Updated Budget").

In the Supplemental Crevoiserat Decl., Mr. Crevoiserat attests under penalty of perjury that the Debtor has reduced its short-term sales projections by 20% to account for the Boeing strike while simultaneously acknowledging that such strike commenced on September 13, 2024 – almost two weeks before the Original Budget was submitted to this Court. Supp. Crevoiserat Decl. ¶ 7(a). Mr. Crevoiserat further attests that the Debtor is holding approximately $250,000 in finished goods as a result of the Boeing strike. *Id.* ¶ 7(b). It is not clear whether these finished goods comprise all or a portion of the "unknown" unfinished goods disclosed in Schedule A/B.

Mr. Crevoiserat goes on to explain that "[t]he Debtor is holding significant amounts of intermediate assemblies that require some added materials or outside processing that the Debtor has been unable to fund while transitioning to bankruptcy. The Debtor expects to complete these items upon approval of usage of cash collateral." *Id.* ¶ 8. It is not clear why final approval of usage of cash collateral would enhance the Debtor's available cash to make these expenditures. Indeed, the Debtor is requesting final approval of its use of cash collateral in accordance with the Updated Budget, but the Debtor has been authorized to use its cash collateral in accordance with the Original Budget and apparently has not had sufficient funds to purchase the necessary materials or obtain outside processing.

As it relates specifically to cash collateral and how it is generated, Mr. Crevoiserat states that "[t]he Debtor has significant open orders from customers." *Id.* Based on Adhara's communications with Debtor's counsel, this statement is misleading as the Debtor is only in discussions with two customers and its only open orders are with Boeing.[4] The Debtor has not furnished any copies of any open orders to Adhara (despite repeated requests), meaning Adhara cannot verify such orders and understand their terms.

On October 21, 2024, the Debtor filed a further updated budget [Dkt. 54] (the "Further Updated Budget") which purports to reflect actual results through week ending October 12, 2024.

---

[4] Adhara reserves its right to depose Mr. Crevoiserat in anticipation of the final hearing on the Motion in order to obtain clarity on this and many other inconsistencies in the Debtor's filings.

The Further Updated Budget notably does not include results for week ending October 19, 2024, even though that week had passed by the time of its filing.

The Original Budget projected that the Debtor would have $59,176 net cash on hand as of October 12, 2024, but the Further Updated Budget reflects that the actual net cash as of October 12, 2024 was just $2,318 – less than 4% of what was projected.

The total expenses for the week ending October 12, 2024 were projected to be $92,700 in the Original Budget, but ended up being $156,493 – a 69% increase. What is particularly concerning about this disconnect between collections and expenses is the fact that a number of the projected expenses from the Original Budget were not actually paid during this initial period, suggesting that over time, the expenses are only going to further outpace collections.

One particularly worrying expense that was projected in the Original Budget, but was not paid is the $30,000 for restock raw materials. It is Adhara's understanding that as a result of not purchasing such raw materials, the Debtor was not able to restock certain inventory to sell to customers thereby hampering its ability to generate sales and collections.

The Further Updated Budget reflects that a number of line items far exceeded the 15% variance permitted under the Interim Cash Collateral Order:

a) Health/medical and other benefits costs were projected to be $0, but were actually $27,722.

b) Non-insider payroll was projected to cost $9,500, but actually cost $39,350, representing a 314% variance.

c) Raw materials were projected to be $6,795, but actually cost $9,634, a 42% variance.

d) Manufacturing wages were projected to be $28,000, but were actually $53,193, a 90% variance.

e) Outside processing was projected to be $4,918, but was actually $19,337, a 293% variance.

The Debtor did not reach out to Adhara to obtain its consent to vary the Original Budget aside from payment of the utilities deposit.

Prior to filing of the Further Updated Budget, Adhara requested breakdowns of each of the totals in the Updated Budget, proof of receipt and/or payments, and copies of the underlying

invoices. Aside from a few QuickBooks summaries, the Debtor has not produced any invoices or other proof of receipt or disbursement of funds. Despite repeated requests, the Debtor has not produced any information or documents relating to or explaining the non-insider payroll and manufacturing wages expenses, a failure made all the more glaring given the substantial variance from the Original Budget with respect to both of those expenses. The Debtor has similarly failed to provide explanations as to where certain payments have been reflected in the Further Updated Budget, including an apparent rent payment of $16,000 on October 1, 2024.

In short, the Debtor has failed to meet its weekly bottom line budget since seeking refuge in this Court and has virtually no cash left in its accounts. Indeed, Adhara understands that the Debtor presently does not have sufficient cash on hand to cover its payroll expenses. Equally troublesome, future sales are predicated on being able to buy raw materials and while the Original Budget included a line item for $30,000 in raw materials that were critically needed, none of the $30,000 in raw materials were procured. As a result, next month's sales will be severely compromised. Adhara further understands that the Debtor will need to procure another $200,000 in raw materials in the coming months in order to maintain operations, sales, and collections, but it is evident that the Debtor does not have the capital necessary to procure such materials.

As a result, Adhara's cash collateral – which has already substantially decreased – is about to plummet even further.

### III.    ARGUMENT

For the reasons outlined herein, this Court should not authorize the Debtor to use cash collateral on a final basis and should deny the Motion. The cash collateral is diminishing in value and the Debtor cannot provide Adhara with adequate protection to protect Adhara from such diminishment.

Bankruptcy Code § 363(c)(2) provides that a debtor may use cash collateral if the party with an interest in such cash consents or the court authorizes such use. 11 U.S.C. § 363(c)(2). Where a court does authorize the use of cash collateral, it shall condition such use "as is necessary to provide adequate protection of" a party's interest in such cash collateral. 11 U.S.C. § 363(e). "Adequate

protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process." *First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) (citation omitted). Thus, "[i]f the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant." *Id.*

The burden lies with the moving party to establish adequate protection. 11 U.S.C. § 363(p)(1). In order to meet that burden and demonstrate that a secured creditor's interest in particular collateral is adequately protected, a debtor must establish facts or provide "projections grounded on a firm evidentiary basis." *In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003) (citation omitted); *see In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996). What will not suffice are highly speculative projections without "concrete data supporting Debtor's rosy sales projections." *LightStyles, Ltd. v. Susquehanna Bank (In re LightStyles, Ltd.)*, Case No. 1:12-bk-03711 MDF, 2021 WL 3115902, 2012 Bankr. LEXIS 3480, at *12 (Bankr. M.D. Pa. July 27, 2012) (denying use of cash collateral which debtor had supported with only the "thinnest of evidence"); *see Resolution Trust Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 567 (3d Cir. 1994) ("Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects."); *In re Clinical Pet of Ocala, LLC*, Case No. 3:16-bk-4646-JAF, 2018 WL 1737210, 2018 Bankr. LEXIS 1098, at *8-10 (Bankr. M.D. Fla. Apr. 10, 2018) (terminating debtor's authority to use cash collateral where debtor had no access to a new debt facility and its projections of value were unduly optimistic).

Here, the Debtor has offered only implausibly optimistic projections and ever-shifting facts to support its position that its cash collateral is not diminishing and Adhara's interest in such cash collateral is adequately protected. This is not enough to overcome the facts that demonstrate otherwise.

The Debtor attempts to rely on the Boeing strike as the basis for reducing its initial projections of revenue, but that strike was well underway when those initial projections were made.

Moreover, the Debtor does not know when the Boeing strike will end[5] or how the financial terms and implementation of any resolution of the strike will impact Boeing's operations and Boeing's relationship with the Debtor going forward, notwithstanding the Debtor's unsubstantiated assurances. In this regard, Boeing is set to re-acquire Spirit AeroSystems,[6] a creditor who canceled its contract with the Debtor last spring and has asserted a $13 million claim against that the Debtor. Considering this, it is far from certain what Boeing's relationship with the Debtor will be once the strike ends.

The Debtor simply does not have the cash flow that it initially projected and, instead, asks this Court and Adhara to rely on the Debtor's rosy projections of future revenues, based on "open orders" that are actually only under discussion and Boeing orders that cannot be completed and converted into collection due to the strike. Other courts have required adequate protection for creditors or denied a debtor's cash collateral motion based on these types of representations, *see*, *e.g.*, *Clinical Pet of Ocala*, 2018 Bankr. LEXIS 1098, at *8-10; *LightStyles*, 2012 Bankr. LEXIS 3480, at *12, and this Court should do the same. Overall, the Debtor's speculations and assurances – all without the benefit of documentary evidence – are not sufficient to rebut the evidence that the cash collateral is diminishing and Adhara's interest in such collateral is not being adequately protected.

In addition to lower revenues than initially projected, the Debtor's expenses appear to be greater than initially projected. Indeed, a number of the Debtor's actual expenses to date are far greater than initially projected (and well beyond the permissible variance), and the Debtor has advised it intends to spend even more on materials and outside processing if this Motion is granted. It is also Adhara's understanding that the Debtor will serve its notices with respect to insider compensation in the near future, thereby asking permission to spend even more out of an already

---

[5] Just this evening, union members voted against ratification of a deal to end the Boeing strike. *See Boeing strike barrels on was workers reject wage deal*, Reuters, https://www.reuters.com/business/aerospace-defense/boeing-braces-union-vote-wage-deal-that-could-end-costly-strike-2024-10-23/ (last visited Oct. 23, 2024).

[6] *Boeing to Acquire Spirit AeroSystems*, Boeing.com, https://investors.boeing.com/investors/news/press-release-details/2024/Boeing-to-Acquire-Spirit-AeroSystems/default.aspx (last visited Oct. 23, 2024).

depleted budget. Meanwhile, the Debtor has not provided any backup or information to substantiate certain of the larger expenses – e.g., non-insider payroll and manufacturing wages – leaving interested parties to wonder what and who exactly were being paid and whether these expenses will persist at these levels or even increase with time. How the Debtor intends to satisfy its growing administrative expenses remains a mystery.

Perhaps most problematic is the fact that the Debtor has failed to utilize its limited funds to purchase the raw materials it budgeted for in the Original Budget. Without those raw materials, the Debtor has been hamstrung in restocking inventory which, in turn, hampers sales which, in turn, reduces collections. This problematic cycle will only grow with time given the Debtor's need to procure a further $200,000 in raw materials over the coming months – an expense it is in no position to bear. Indeed, Adhara understands that the Debtor does not even have sufficient cash on hand to stay current on payroll.

In sum, the overall picture is that of diminishing cash and ever-increasing expenses. This is borne out by the fact that while the Debtor initially projected that it would have cash on hand of $59,176 by October 19, it appears to actually have had only $2,318. Without contracts or open orders and without an immediate influx of working capital, it is highly unlikely that this Debtor can successfully reorganize and should not be permitted to burn through Adhara's cash collateral in its futile effort to do so. Adhara thus submits that this Court should deny the Motion and decline to authorize continued use of Adhara's cash collateral.

In light of the inconsistencies in the Debtor's disclosures in support of the Motion, both in formal pleadings and in communications between counsel, Adhara respectfully requests that the final hearing on the motion be an evidentiary hearing.

Finally, in the event this Court ultimately decides to allow the Debtor to use cash collateral, the Debtor must provide Adhara with adequate protection to safeguard against the diminution of such cash collateral. In this regard, Adhara proposes a monthly payment equal to the interest that would otherwise be due under the Adhara Loan. Adhara has good reason to question whether the Debtor, through Mr. Crevoiserat, is being forthright and accurate in its reporting of its receipts and

disbursements, particularly given the significant differences between the Original Budget and the Further Updated Budget and its failure to produce documents to support the Further Updated Budget. Accordingly, adequate protection payments will provide Adhara a measure of protection against anticipated diminution in its cash collateral.

### IV.    CONCLUSION

For the reasons set forth above, Adhara respectfully requests that this Court deny the Motion and grant such other, further, and different relief as it deems just and proper.

Dated:  October 23, 2024                                  DORSEY & WHITNEY LLP


By:   */s/ Rachel P. Stoian*
     RACHEL P. STOIAN
     Attorneys for Creditor,
     Adhara Aerospace and Defense, LLC

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

167 Hamilton Avenue, Suite 200, Palo Alto, CA 94301

A true and correct copy of the foregoing document entitled (*specify*): **Opposition of Adhara Areospace and Defense LLC to Debtor's Motion for Order Authorizing Use of Cash Collateral on a Final Basis**
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 23, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached.

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 23, 2024 | Rachel P. Stoian | */s/ Rachel P. Stoian* |
|---|---|---|
| Date | Printed Name | Signature |

**ADDITIONAL SERVICE INFORMATION**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  
4867-7635-7106\1

**F 9013-3.1.PROOF.SERVICE**

**SECTION 1 – NEF SERVICE**

Nicolino Iezza on behalf of Interested Party Courtesy NEF
niezza@spiwakandiezza.com

Misty A Perry Isaacson on behalf of Interested Party Courtesy NEF
misty@ppilawyers.com, ecf@ppilawyers.com;pagterandperryisaacson@jubileebk.net

Christopher J Petersen on behalf of Interested Party Courtesy NEF
chris.petersen@blankrome.com, evelyn.rodriguez@blankrome.com

David Samuel Shevitz on behalf of U.S. Trustee United States Trustee (LA)
David.S.Shevitz@usdoj.gov

Jeffrey S Shinbrot on behalf of Debtor Skylock Industries Inc
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com;tanya@shinbrotfirm.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    F 9013-3.1.PROOF.SERVICE
4867-7635-7106\1